Cranston & Folmer *vs.* The Cincinnati, H. & D. Railroad Co.

In Special Term—December 1854.

GHOLSON, J. presiding.

ADONIRAM J. CRANSTON AND DANIEL FOLMER, PARTNERS,
AS CRANSTON & FOLMER,

*vs.*

THE CINCINNATI, HAMILTON & DAYTON RAILROAD COMPANY.

The mere fact that cattle have strayed, without right, on the track of a railroad, neither establishes that character of negligence, which precludes a claim for injury done, by running the locomotive against them, nor justifies a want of proper care to save and preserve them from destruction.

Whether the negligence of the owner of the cattle has contributed to the injury in such manner as to preclude a recovery, and whether those in charge of the locomotive have used the proper degree of care, are questions depending on the facts and circumstances of the case.

The employees of a railroad company, in charge of a passenger train, have the legal right to pursue such a course in respect to cattle found on the track, without right, as a proper regard for the safety and protection of the persons and property in their charge may require. The owner has no right to expect his property to be protected, unless it can be done consistently with the higher obligations resting on the company: and that railroad companies may be left to a full and proper discretion, in pursuing the course which will best fulfil their important duties to the public, their acts in this respect should receive a favorable construction.

The general principle, applicable in such cases, is, that every one in the conduct of that, which may be harmful to others if misconducted, is bound to the use of due care and skill; and the wrong doer is not without the pale of the law for this purpose. No more than the necessity of the case may require, can be properly done, when the excess may be in any manner injurious to another; and a proper degree of care should be used to avoid this excess.

This was an action at common law, originally brought in the Court of Common Pleas, before the Code, and transferred to this court. The declaration charged the defendants with "maliciously contriving and intending to injure the plaintiffs, by driving their locomotive with great force and violence against and upon six cows of the plaintiffs," &c. whereby the said cows were killed, &c. To which the defendants plead the general issue.

25

The plaintiffs being dairymen, and residing upon a farm, about eight miles distant from Cincinnati, pastured their cows upon a large tract of land through which the railroad ran, there usually being from fifty to seventy-five cows in the pasture. There were no fences along the line of the railroad, and no means resorted to by either party, to prevent the said depastured cattle from straying upon the track. The cows were killed by the regular passenger train, which was passing the locality at the usual and regular time of day, and at the customary rate of speed, that being from thirty-five to forty miles per hour, at that place. The cows could have been seen by the engineer some three or four hundred yards distant, at which point the road curved; but the engineer did not blow the whistle or make any signal of alarm until just as the engine struck the cows. The plaintiffs were in the habit of driving up their cows, just at the time of day when the passenger train was due there, and had frequently been warned against doing so, but continued the practice. The farm occupied by the plaintiffs, was the property of John Ludlow, Esq. who had contracted with the railroad company to build fences at his own expense, upon either side of the track, through the said pasture, within two years from the date of the contract; and afterwards, but previous to the expiration of the two years, leased the premises to the plaintiffs. Afterwards, and while the plaintiffs were in possession of the said premises, the Railroad Company entered into a new contract, or rather a modification of the old contract, with Ludlow, whereby they agreed to furnish the lumber for the fences, and under this contract Ludlow built the fences, after the cows of plaintiff were killed. It was also in testimony, that the danger to a train of cars

is materially augmented by striking a cow or other movable object upon the track, at a slow rate of speed, and unless the obstruction can be entirely avoided, it is safer to strike it at a high rate of speed; and that a train of cars running thirty or forty miles per hour, cannot be safely stopped in a less distance than from three quarters to one mile.

W. VAN HAMM & E. Fox for plaintiffs.    WORTHINGTON & MATTHEWS for defendants.

GHOLSON, J.

The plaintiffs, in the summer of 1852, were dairymen, keeping their cows in a pasture through which the road of the defendants passed. Several of the cows of the plaintiffs, getting on the track of the railroad, which was not fenced or enclosed, were killed by the locomotive. This action is brought to recover damages for the injury so sustained.

The evidence does not show, that the defendants were bound by any contract with the plaintiffs, or any other person, to enclose the track of their road, so as to prevent cattle straying upon it from the adjoining ground. The effect of the evidence upon that point is rather to show the contrary, and that the owner of the land, who had leased it to the plaintiffs, had contracted with the Company to construct a fence on each side of the track.

The rule at common law appears to have been, that the owner of land was not obliged to fence against the cattle of other persons. In the absence of any contract, and independent of any statutory regulations, railroad companies, in respect of the tracks of their roads, stand in a like position; they are not bound to erect a fence to

keep off cattle, and the omission to do so cannot be imputed as negligence, and be made the foundation of an action.

There is a class of cases which may be supposed to conflict with the rule I have stated. The common law not only did not require the owner of ground to protect it by a fence, from the intrusion of the cattle of his neigbors, so as to free him from any care or responsibility in respect of cattle so intruding, but it imposed a duty on the owner of cattle, to keep them on his own close, and held him liable in case he did not, for any damage they might do to the herbage or crops on the enclosed land of his neighbor. In other words, it was considered that the cattle committed a trespass, and that their owner was responsible therefor. Now, in view of the great difference between this country and England, as to land and its use, and in consequence of the statutory enactments, as to fences and enclosures, which prevail in most of the States, it has been held in some of them, that the rule of the common law does not apply in such a case, and that the owner of unenclosed land can have no such right of action. To this effect are the cases of Studwell *vs.* Ritch, 14 *Conn. Rep.* 293; Seeley *vs.* Peters, 5 *Gilman* 130; 8 *Barr.* 472; Fripp *vs.* Hasell et al; 1 *Strobhart* 173.

The rights and liabilities of owners of adjoining land, in this country, seem to be like that of persons having what in the English law is termed " common," by reason of vicinage. " There each of the owners of the respective commons or wastes, may enclose, but neither does, and the persons having the right of common on the respective commons or wastes, turn thereon their cattle ; the cattle wander from the one common to the other, yet no action

of trespass lies. Why? Because it is matter of mutual convenience; and to require the commoners on either side to watch their cattle and keep them on their respective commons, would be to require a thing to be performed which man is incapable of doing." *Burrough, J.* in Deane *vs.* Clayton, 7 *Taunt. Rep.* 489. And there can be but little doubt, that if the owner of land in Ohio should attempt to raise on it a crop of corn, without any inclosure, he could maintain no action against his neighbors, for the almost certain interruption their cattle would cause, to any such undertaking. To sustain an action for an injury of that kind, the owner of land would be required to show, in the language of our act concerning fences and inclosures, that he had a fence, " such as a good husbandman ought to keep."

There is, however, a great difference between an action by the owner of land, against the owner of cattle, for the injury done by their breaking into or straying upon the land, and an action by the owner of cattle against the owner of land, for an injury which the cattle may sustain while so upon the land. And in respect to the latter case, I see no reason to doubt that the rule of the common law prevails. That it does so prevail, and is as applicable to a railroad company as any other owner of land, appears to be settled by numerous authorities. Munger *vs.* Tonawanda Railroad Company, 4 *Comst. Rep.* 349, and cases cited; Ricketts *vs.* E. & W. I. Docks & Co.'s Railway, 12 *C. B.* 74, *English Com. L. Rep.* 160, and cases cited.

There being then, in this case, no contract or duty in respect to fencing, upon which the action can be founded, I next come to the other ground, upon which the counsel for the plaintiffs claims to recover,—the negligence of

those in charge of the locomotive belonging to the defendants; and here a question arises of some difficulty, and on which there is an apparent conflict in the authorities. Whether the cows of the plaintiffs, having been wrongfully on the track of the defendants, an action can be maintained for the negligence of those employed by the defendants? Whether in such a case as the present, it appearing that the cows of the plaintiffs were without right, and from the neglect or imprudence of the plaintiffs, in not keeping them inclosed, on the track of the railroad, the question as to a liability for negligence on the part of the defendants can properly arise or be considered?

There are strong authorities that, in such a case, no action can be maintained, though the negligence be what is termed gross· or culpable. Among these authorities, there is none of greater weight, (and it may, indeed, be said to be the leading one,) than the case of the Tonawanda Railroad Company *vs*. Munger, first decided by the Supreme Court of New York; 5 *Denio* 255, and afterwards by the Court of Appeals, 4 *Comstock* 349. In that case, to show that the action cannot be maintained, on the ground of the negligence of the defendants, two reasons appear to have been assigned:

1. There would have been no injury, if the cattle had not been on the track of the railroad, "and having been there without right, the law imputes a fault to the plaintiffs," and this fault directly contributing to produce the injury, they cannot recover.

2. The defendants were in the lawful exercise and enjoyment of their rights, and would have done no injury to the plaintiffs, if their cattle had not strayed on the track of the railroad, and being there without right, the

law did not enjoin it as a duty, on the defendants, to take care not to injure them; and the want of such care was not, therefore, in judgment of law, a fault to be attributed to the defendants.

The decision of the Supreme Court, and of the Court of Appeals, in New York, in the case of Munger *vs*. Tonawanda Railroad Company, has been followed, and its authority sustained, not only in subsequent cases, in that State, but in several cases decided in other States.

The idea upon which those cases have been decided is, that a wrong doer has no right to complain of an injury, to which his own wrongful act was contributory; that as he has placed himself in a position, in which he has no right to exact care for the safety or protection of his property, he cannot make the want of it a ground of complaint.

In the case of the Tonawanda Railroad Company *vs*. Munger, 5 *Denio* 266, it is said, "Negligence is a violation of the obligation which enjoins care and caution in what we do. But this duty is relative, and where it has no existence between particular parties, there can be no such thing as negligence in the legal sense of the term. A man is under no obligations to be cautious and circumspect towards a wrong doer. A horse straying in a field, falls into a pit, left open and unguarded, the owner cannot complain, for, as to all trespassers, the owner of the field had a right to leave the pit as he pleased, and they cannot impute negligence to him. But injuries inflicted by design are not thus to be excused. A wrong doer is not necessarily an outlaw, but may justly complain of wanton and malicious mischief. Negligence, however, even when gross, is but an omission of duty. It is not designed and

intentional mischief, although it may be cogent evidence of such an act. Of the latter a trespasser may complain, although he cannot be allowed to do so in regard to the former."

In the case of the Railroad Company *vs.* Skinner, 19 *Pa. St. Rep.* 302, Chief Justice Gibson, after saying that the protection of property, found wrongfully on the track of a railroad, was merely incidental to the necessity which might result of avoiding a collision with it for the safety of the train and passengers, proceeds: "If the owner of it do not attend to it, the company's servants, having their own business to mind, are not bound to do so, and he who trusts his property to the chances of accident, is bound to stand the hazard of the die."

So in the very recent case of Tower *vs.* Providence and Worcester Railroad Company, 2 *Rhode I. Rep.* 404–409, it is said: "Legally speaking, negligence is the want of that care which the law requires us to exercise, which it exacts as a duty. This care may be due to one individual, and not to another, and therefore negligence in fact is not always negligence in law, for unless a party can show, that some duty in law is violated, he shows no legal negligence. So far as mere neglect goes, there is no violation of duty. This, of course, does not extend to wilful acts, whereby the person or property of any one is injured. For wilful or intentional injuries the person guilty would be liable."

An English case, Blyth *vs.* Thompson, *Cro. J.* 158, is relied on as authority. In that case, the defendant dug a pit on his land. The mare of the plaintiff, straying on the land, fell into the pit and was killed. The court held, that as the owner of the mare had no right to have her

on the land, the digging the pit was lawful, as to him, and that he could not recover.

In the case cited, from 2*d Rhode Island Reports,* (page 411,) it is said, that the only difference between the case reported in *Croke James,* and such a one as the present is, "that the cattle were killed in one instance by being run over, and in the other, by falling into the pit made by the defendants."

Now, may not this *only difference* be one most material? The difference consists in an act done when the danger of injury to another is immediate and apparent at the time, and an act done in view and expectation of no injury to another. The rule as to duty and liability, in one case does not necessarily apply in the other. An act entirely innocent and lawful, in itself, may, when done under some circumstances, or from the manner of doing it, become not only negligent, but absolutely wrong. It may be very true, that if the relation between the parties does not require care, there can be no neglect; but to assume that in such cases as the present, no care is required, may well be considered as taking for granted the point which ought to be established.

The act claimed in this case to be wrongful, was not the construction of a railroad track or of a locomotive, but the running of a locomotive upon or against the property of the plaintiffs, then being on the railroad track. All the cases which have been cited, admit, that if this act was done intentionally, it would be wrongful. That the defendants would have no right, purposely, to kill and destroy the property of the plaintiffs, though the same might be wrongfully on the track of the road. If the mere fact of the property being wrongfully on the land of

26

the defendants gave no right to kill and destroy, and such an act would have been wrongful on the part of the defendants, is it not a duty always incumbent to take care that no injury be done to the property of others? Such, I understand to be the principle laid down on this subject by high authority, and I can see no reason why it is not applicable to such cases as the present.

In the case of Mayor of Colchester *vs.* Brooke, 7 *Q. B.* 53 *E. C. L. R.* 339, which was an action against an owner of a vessel, for an injury to oyster beds, in a navigable stream, and the defence was, that they impeded navigation, and might be destroyed; but it did not appear but what they might have been avoided, the court after deciding, that, though the oyster beds were wrongfully in the river, the defendant had no right to destroy them, proceed to say, "If, then, the defendant could not have done this purposely and knowingly, the same principle shows that he was bound to use due care and skill in the navigation of his vessel, so as not to do it unwittingly by want of these. As a general rule of law, every one, in the conduct of that which may be harmful to others, if misconducted, is bound to the use of due care and skill; and the wrong doer is not without the pale of the law for this purpose."

The case just cited, and others, such as Davies *vs.* Mann 10 *M. and W.* 546, showing that a wrong doer has a right to exact some care towards him and his property, are cases in which the injury was committed on a public highway, but the principle is the same. And in the recent case cited from 12 *C. B.* 74 *E. C. L. R.* 160, where the action was for the killing of sheep by the locomotive of the defendant, and was decided for the defendant on the

ground that there was no duty of fencing as to the plaintiff, Jervis, C. J. expressly says, "There is no allegation that the accident could have been avoided, or that the company had, by themselves or their servants, been guilty of negligence in that respect." Cresswell, J. says: "there is no complaint here that the defendants conducted their business in a negligent manner." These remarks of the Judges, and the argument and admission of counsel, in that case clearly show, that a trespasser on the land of another, is entitled to some care in respect of his property, and may maintain an action for negligence, for the want of that degree of care to which he may be entitled.

There are earlier cases in England which fully and clearly illustrate this principle, and among them is the case of Vere *vs.* Lord Cawdor, 11 *East.* 568.

This was an action for killing a certain dog of the plaintiff. The plea was, that the dog was killed by the game-keeper of the defendant, while running after hares in the close, part of the manor of the said lord. The counsel for the defendant in arguing a demurrer to the plea, was stopped by the Court, who were clearly satisfied that the plea was bad, and observed to the plaintiff's counsel, that it did not even state that the killing of the dog was *necessary* for the preservation of the game. The counsel for the defendant cited some precedents of an early period, in support of the plea. Lord Ellenborough, C. J. said: "The question is, whether the plaintiff's dog incurred the penalty of death, for running after a hare in another's ground? And if there be any precedent of that sort, which outrages all reason and sense, it is of no authority to govern other cases. There is no question here as to the right to the game. The game-keeper had

no right to kill the plaintiff's dog for following it. The plea does not even state that the hare was put in peril, so as to induce any necessity for killing the dog in order to save the hare."

This case was much commented on, in the novel and interesting case of Deane vs. Clayton, 7 *Taunt.* 489 ; 2 *E. C. L. R.* 183, and the principle assented to by all the Judges, though they differed as to its application to the case before them. In that case, Dallas, J. said, referring to the class of decisions of which Vere vs. Cawdor is one : " To the next class of decisions, I also, equally accede ; namely, those which establish that you shall do no more than the necessity of the case requires, when the excess may be in any way injurious to another ; a principle which pervades every part of the law of England, criminal as well as civil, and indeed belongs to all law that is founded on reason and natural equity."

In addition to the English authorities which I have cited, to show that a wrong doer is not without the pale of the law, in respect of a proper degree of care for his person and property in such cases as the present, there are several recent American decisions which hold the same doctrine. (Trow vs. Vermont & Central R. R. Co. 24 *Vermont Rep.* 487; Waldron vs. Portland R. R. Co., 35 *Maine,* 422.)

And while I have a high respect for the learned Courts which appear to have decided otherwise, I cannot assent to the proposition, that railroad companies are bound to exercise *no care* in respect of cattle straying on the track of their roads.

From what has been said, it will not be understood that the general proposition, that a party cannot recover

Cranston & Folmer *vs.* The Cincinnati, H. & D. Railroad Co.

for an injury to which his own wrongful acts contributed, is denied. To that general principle and its well established qualifications, I fully assent. But my conclusion is, that the mere fact of the cows of the plaintiffs straying, without right, on the track of the railroad of the defendants, neither establishes that character of negligence which precludes a claim for injury done to them, nor justifies a want of proper care to save and preserve them from destruction on the part of the defendants. Whether the negligence of the plaintiffs has contributed to the injury, in such manner as to preclude their recovery, and whether the defendants have used proper care, are questions depending on the facts and circumstances of the case.

It clearly follows from the principles which I have before laid down, that it was the legal right of the defendants to pursue such a course in respect of the property of the plaintiffs, as a proper regard for the safety and protection of the persons and property in their charge required. The plaintiffs had no right to expect their property to be protected, unless it could be done consistently with the higher obligations and responsibilities resting on the defendants; and that railroad companies may be left to a full and proper discretion, in pursuing the course which will best fulfill their important duties to the public, their acts should receive a favorable construction.

I find from the evidence, that the rate of speed at which the train of the defendants was propelled,—thirty-five to forty miles an hour—was the ordinary rate for that train, and not greater than what is to be deemed entirely proper: I find from the opinion of those skilled in the matter, and which opinion I have no doubt is correct, tha

the train could not have been stopped, when running at that rate of speed and at that point of the road in a distance much less, if any, than one mile. That had an attempt been made, after reaching a point at which the cows could be seen, to stop the train, though the rate of speed might have been lessened before coming in contract with the cows, the danger of injury to the train and passengers would have been greatly increased. I am satisfied from the facts, that it was the duty of the engineer not to attempt to stop the train. I find from the evidence the construction of the locomotive is such, (and that it is the best mode of construction,) that it is much safer to come in contact with any moveable obstruction on the track of the road, such as a cow, at a high than at a low rate of speed.

The only point as to which the evidence of a want of proper care, on the part of those in charge of the train, is at all deficient, is in respect to the alarm usually made by causing the engine, as it is termed, to whistle, so as to scare the cows from the track. The evidence does not show whether this was done at the proper time. The only witness appears to think that the striking the cows and the whistle of the locomotive were simultaneous. The rate of speed being so rapid and the distance being so short, he may well have been mistaken on this point, and in the absence of any clear proof, I feel bound to presume that the engineer of the company did what was usual and proper in this respect.

And not only is there no sufficient proof of a want of care, on the part of the employees of the company, but there is shown that kind of negligence on the part of the plaintiffs, which may well be considered to be contributory

to the injury. The rule on this point has been laid down in a recent case, before cited; Trow *vs.* Vt. & Central R. R. Co., 24 *Vermont Rep.* 487, 495. "Where the negligence of the defendant is proximate, and that of the plaintiff remote, the action can then well be sustained, although the plaintiff is not entirely without fault." I think the negligence proved in this case, on the part of the plaintiffs, may well be considered proximate, within the meaning of the rule.

It appears that the plaintiffs had purchased a large part of the cows from the owner of the pasture; that the cows had been kept for some time in the same place, without any accident; that the train from the running of which the accident happened, passed regularly every day, about 10 o'clock; that the plaintiffs, after they took possession, commenced driving up the cows for the purpose of milking, just before the time when the train was due, so that the cows in returning to the pasturage would naturally be crossing on the track, at the time the train passed. That the plaintiffs were told of the danger, again and again, by the former owner of the cows, who urged upon them that they should drive up the cows for milking, a little earlier, or a little later, as had been done before. This advice and expostulation was unheeded. In the language of their own witness, they did not use that precaution which they ought to have used. This case can scarcely be looked on, as a case of cows accidentally straying on a railroad track; it is rather one in which their owners have most carelessly and imprudently driven them into immediate danger, reckless of the consequences.

On either ground, therefore, I feel bound to find for the defendants, and a judgment will, accordingly be entered for the Railroad Company.